Good morning. Amitai Schwartz, if it may please the Court, appearing on behalf of Donald Tosti, the defendant and appellate. I want to start by addressing the two searches, the 2005 search, which, of course, later led to the 2009 confiscation and search of the computer media. If there's time remaining, I'd like to address the reasonableness of the sentence in light of my client's infirmities and advanced age. Would you like to reserve a little time for rebuttal? I would. How long? Three minutes. Okay, thanks. That was the first thing on my agenda. Thank you. With regard to the 2005 search, this was the search that occurred as a result of bringing the computer to CompUSA for repairs. And there were two critical events that occurred with regard to the two police officers. Officer Shikori, who was the first officer on the scene after being alerted by the CompUSA technician, asked or directed the technician to open up what were characterized as small thumbnail images to open those in a slideshow mode. In other words, to expand them and to look at them individually. And I think the question is whether that constitutes a search beyond the display of the images that were shown in them. Well, what did they learn from the thumbnail that they didn't already know? Because I think at the hearing there was testimony that they didn't learn anything from enlarging, scrolling through images that were already discernible on the thumbnail. And I think it's also questionable, did the private person do it or did the officer do it? But anyway, why should we hold that enlarging or scrolling through images already discernible in a thumbnail format constitutes a Fourth Amendment search? Because it's an expansion. It's a all, first off, let me just clarify, there was no hearing in the sense of a factual hearing. There were arguments before the district court judge, and there was paper in the sense of declarations and a search warrant affidavit. But that still counts as an evidentiary hearing if you, that's just how you decided to do it, right? That's correct. But there was no, I would contend, Your Honor, there's a big difference between hearing the witnesses and reading what was written on the paper. But in any event, I would analogize it to hearing, say, muffled voices in a, let's say, they used to have these things called phone booths. And so you hear muffled voices in the phone booth, and you think that you hear something nefarious going on, something bad. So the question is, how do you amplify that to find out whether, in fact, it's bad? And so there are various ways of doing that. You can attach something to the outside of the phone booth so that the law enforcement can listen better. But the difference you have here is someone that's a private citizen who's working at a computer place calls the police and says there's child pornography on this computer. Here it is. Yeah. And so why don't we stop there, seize the computer, go get the warrant. The officer looked at the thumbnails so that the officer could have corroborated what the private citizen said. And we're not complaining about what the private citizen did. We're complaining about the officers directing the private citizen to open the thumbnails, which were characterized as small thumbnails. And we don't know how small. But clearly, they weren't big enough. Otherwise, why did he bother asking them to open it and not just take the computer and ask for the warrant? We wouldn't be here. So, but instead what happens is you amplify it. And the private citizen is no longer a private citizen in the sense of being unaffiliated with the law enforcement agency because the responding officer directed him to open it in slideshow mold. So at that point, he becomes an agent of the police in doing so. And the, I think, you know, we posed this in our briefs. But I want to go there. Okay. But my understanding is Detectives Shakur or Shakuri or whoever, he said he could tell by looking at the thumbnail pictures that they depicted child pornography at ER 260. Yes. So? So why did he have to open it up further? And we don't know exactly. I mean, there were some pictures that were child pornography and apparently some that were adults at a party or something to that effect, which would not have been. But he didn't go to another part of the computer. He was still in the same container. Is that correct? In the same folder, yes, which we could characterize as a container within the computer, within the container. Suppose he had been 75 percent sure that it was child pornography. And to verify it, to make sure it was, he asked that it be enlarged. Different case? No, I don't think so. Because if he was 75 percent sure, I think that would have given him probable cause to go before the magistrate and say, to seize the computer, go before the magistrate and say, Your Honor, I looked at these small thumbnails, I'm 75 percent sure that these constituted child pornography. I want to warrant to search this computer in its entirety and search, you know, the home and everything else. But I don't think that, I don't think that that would change it. But let me go on to the 2009 search, because the 2009 search is the one where, or excuse me, let me go to the 5th and the 7th circuits say you can go further in the container, correct? Excuse me? The 5th and the 9th, the 5th and the 7th circuits, I think, say that. In a sense. I mean, the Runyon case is the 5th, the 5th circuit. It says that once, well, the Runyon case is a nuanced case. I mean, it's not a blank. Well, it's not precedent here, but the other circuits that have looked at it seem to have said that you could open the thumbnails. Only if they're going to expose nothing more than what you've already seen. That was the line that the Runyon court drew. The Runyon court was quite, and that's the 5th circuit, was quite clear to say that you can't use this as a fishing expedition just because you saw some. Right. But the officer here said that he could tell it was child pornography from the thumbnail sketches. Yeah. So why did he have to open up the, for the? Well, but I'm just saying Runyon said that you can. Well, Runyon, I understand. Okay. Runyon said. But the second search, and this is the one the government relies on, is the search by Officer Rudolph. And I think this one is even clearer. Now, we're still back in 2005. Rudolph is the second officer to arrive on the scene. He says, or the search warrant affidavit that's filed in State court says, and this is found in the excerpts of record at 334 and 335, he says that there were about a dozen small thumbnails open on the screen. And then he scrolls through them. And we learned from the affidavit that there are 135 images that he scrolls through. So at that point, we've got the, and this is what's submitted to the State court magistrate for the warrant. We've got the private individual apparently showing the two officers approximately a dozen images. And then you've got Officer Rudolph scrolling through 135. That is not the same as what he originally saw. I just, I guess I'm having trouble understanding what the problem is here. The private citizen saw the child pornography on the computer, calls the police. The police comes and says, yeah, that's child pornography. The second officer comes in, scrolls through and sees that there's, says, let's see how bad this is, scrolls through the rest of it in the file and says, oh, there's an awful lot here, we're going to go get a, let's go get a warrant and get it. He could have gotten the warrant, if I understand it, could have gotten the warrant without scrolling through those other files. He just wanted to make sure. So what is the harm here? There is authority in other circuits that you can do that. So why should we hold you can't? Well, because we care about warrants. And we care about making sure that a neutral, detached magistrate makes the decision whether there can be a further search. And it really depends on how much, how important that concept is. If we want to encourage officers to go out and get warrants instead of just laying scrummaging around and then scratching their heads and saying, now we'll go, if we take the, I know we all take the warrant requirement seriously, but if we want to encourage, and that's why it matters, is because if we want to encourage officers to get the warrants and not make the warrant requirement an empty letter, then at the first point where there's probable cause, we say you can't do a further search because you need to ask permission and get a license from the, from the detached magistrate. And that's why, that's why I think it matters. And otherwise, we're encouraging a regime where you kind of look first, see what you can find, peek through it, and then if there's enough there, you say, well, it's all right, we'll get the warrant. And that's not the way it's supposed to work. The, the, the reason that I think this case goes beyond just the child pornography context is because it is a computer. And, you know, whether it's a computer or an iPhone or a smartphone, you bring it in for repairs, you don't expect, even if the repair person finds something on there that they think is evidence of, of criminality or is contraband, you don't expect a police officer to come in and start rummaging through the whole thing. I don't think you, I don't think you, but you don't have any authority for the fact that a computer repair person shouldn't call the police, right? No. And I'm not contending. Okay. And I'm not, and we're not contending that he shouldn't. I mean, he. All right. You're getting. You're, you're, you're just saying we should encourage the police to get an, get a warrant  Well, I'm not the only one that's saying that. The Supreme Court says that as well. Anyway, I'll reserve the rest. Okay. Thank you. Good morning. Good morning. May it please the court. Julia Malkina for the United States. No, you're from DC. Why isn't this local? The Department of Justice is arguing this case. The Department of Justice argues a number of cases from the U.S. Attorney's offices. I just, I'm used to just seeing the U.S. Attorney's office here. Okay. Go ahead. Unless the court has questions on the substantive reasonableness of the defendant's sentence, I will address the two issues, the issue discussed by opposing counsel today, the computer technician's 2005 search. The government inspection of property already searched by a private party is not a fourth amendment search unless it exceeds the scope of the prior private search. While repairing the defendant's computer, a technician opened and examined a computer folder, discovering many graphic images of child pornography. Law enforcement's subsequent confirmation of the technician's discovery was not a fourth amendment search. There's only one factual dispute with respect to Detective Shakur, the first detective. That factual dispute is whether he viewed images in a slideshow format. Even if Detective Shakur did so, the district court correctly held that evidence obtained pursuant to the 2005 warrant was admissible for three separate and distinct reasons. Now, the, there's the Fifth and the Seventh Circuits, I think, authority that allows you to go in the folder if it's the same container or whatever. We don't have anything specifically like that in the Ninth Circuit. Is that correct? There is nothing specific like that in the Ninth Circuit, Your Honor. But for the purposes of Detective Shakur, the court need not rely on those precedents. There's three separate and distinct reasons why Detective Shakur did not search the ISBI folder, not relying on even those precedents. The first is that the district court correctly held that Detective Shakur only viewed images the technician viewed. That's in the technician's declaration. That's what the district court determined. And as I understand it, the defendant does not contest that. Under the Jacobson private search doctrine, once the technician viewed the images, he frustrated any reasonable expectation of privacy in them. Detective Shakur's subsequent viewing of the images in a slideshow format would therefore infringe no reasonable expectation of privacy. To take this out of the computer context, if there's no reasonable expectation of privacy in an item, none attaches simply because law enforcement. What is it that dissipates the reasonable expectation of privacy? Here, the technician states that the images that Detective Shakur viewed were the images the technician viewed. Once the technician viewed those images, there's no reasonable expectation of privacy in those images. In those images, but you're not arguing that there was no reasonable expectation of privacy in the rest of it? For the purposes of Detective Shakur, we need not argue that. I understand that. I understand. I'm just trying to get the limit of this argument. Okay. Yes, Your Honor. So is the evidence whether, okay, the evidence was that he, the thumbnail, he could tell from the thumbnail. Yes, Your Honor. That it was child porn, right? The detective could tell from the thumbnail. Both detectives could. And the defendant's argument relies on the technician being able to tell from the thumbnail that the images were child pornography. Because if the detective was unable to tell from the thumbnail that the images were child pornography, he had to have viewed them in slideshow format or in some other way to determine that they were child pornography before calling law enforcement. Okay. As we said, it's undisputed that Detective Shakur identified the images as child pornography in thumbnail format. That's the separate and distinct reason. Yes, Your Honor. And that Shakur, but you're limiting this to Shakur. You haven't reached the question of whether when they, when the other police officer came and they looked at other pictures that there was, that they were violating the Fourth Amendment. Yes, Your Honor. I'm happy to address that or to finish with respect to Detective Shakur. Get there eventually. Yes, Your Honor. The district court found, excuse me, because Detective Shakur could identify the images as child pornography in thumbnail format, that extinguished any reasonable expectation of privacy in the images. There's no reasonable expectation of privacy in contraband. So once the images were identified as contraband, that's the end of the game. Also, we have an exclusionary rule argument with respect to Detective Shakur based on the independent source, and we only rely on the independent source for purposes of Detective Shakur. Anything Detective Shakur viewed was not included in the warrant affidavit, and he also had no role in seeking the warrant affidavit or in compiling the underlying warrant affidavit. Therefore, under the independent source doctrine, even if this court were to determine that his actions were search, the evidence under the 2005 search warrant was admissible. Turning to the second detective, Detective Rudolph, the district court correctly held that his scrolling through the ISBI folder did not affect the admissibility of the evidence obtained pursuant to the 2005 warrant for three separate and distinct reasons. First, the defendant has forfeited any argument that Detective Rudolph viewed more images than Suzuki viewed because he did not argue that below or in his opening brief. Indeed, the defendant specifically disclaimed that argument below. At the motion hearing, the district court asked the defendant's counsel, and this is at the bottom of excerpts of record 576, is there any evidence in the record to suggest that either Detective Shakur or Detective Rudolph viewed any file folder or images other than the file folder and images opened by Mr. Suzuki before they sought to obtain a warrant, or is the crux of Dr. Toste's argument that the detectives allegedly asked Mr. Suzuki to enlarge the images and subsequently scroll through the file folder? The defendant's counsel answered the latter. Based on that concession, the district court determined, and this is in the district court's order at the middle of excerpts of record 4, that Dr. Toste agreed that there is no evidence in the record to suggest that either Detective Shakur or Detective Rudolph viewed any file folders or images other than the folder and images that Mr. Suzuki had viewed. Those were the facts on which the district court decided this case, and any argument to the contrary is not properly before this Court. If Detective Shakur viewed only images, excuse me, if Detective Rudolph viewed only images that the technician had previously viewed, scrolling through those images again is not a search under the Jacobson Private Search Doctrine. Second, it is undisputed that Detective Rudolph's actions were limited to the ISBI folder. He did not open or interact with any other folder. That is what the district court found. That is what Detective Rudolph's declaration states, and the defendant has made no argument to the contrary. There is no reasonable expectation of privacy in the ISBI folder because Suzuki opened that folder. Indeed, he opened that folder twice, examined images in that folder. Indeed, he examined images in that folder twice, and discovered numerous images of child pornography before contacting law enforcement. Detective Rudolph's subsequent scrolling through the folder therefore infringed no reasonable expectation of privacy. Are you saying that on this record he didn't look at anything that Suzuki had not already looked at? Your Honor, we're saying that the defendant has forfeited any argument to the contrary, and there's no. That is what he's arguing, but that at the district court he said he wasn't arguing it? Well, no. Below the district court, below the defendant specifically forfeited that argument. The district court thus determined that case based on the defendant's concession below, and there's no evidence in the record to the contrary. There's no evidence in the record that Detective Rudolph viewed more images than Suzuki. Finally, regardless of the propriety. Is there evidence that he viewed them in a different size than Suzuki? No, Your Honor, and I believe that that's undisputed. That Detective Rudolph only viewed images in the ISP folder and that he only viewed them in the thumbnail format. Finally, regardless of the propriety of Detective Rudolph's actions, the 2005 warrant was supported by probable cause. Even if this court agrees with each of the defendant's arguments, at most a subset of the evidence in the warrant affidavit would be tainted. The tainted evidence would be any images that Detective Rudolph saw that Suzuki did not see. After excising that evidence, more than sufficient probable cause would remain. The untainted evidence would include Suzuki's discovery of the numerous images of graphic sex scenes involving children and adults. It would also include at least those images identified by both detectives. That is because it is undisputed that Detective Shakur viewed only images that Suzuki viewed. Therefore, if both detectives identified those images, then Suzuki viewed the images as well. An example is the image of the vaginal penetration of an infant female. Both detectives identified that image, which means that Suzuki also viewed it. And a description of that image was included in the warrant affidavit. A description of that image alone would support probable cause in this case. And there were also other images that could be traced in a similar manner. If the Court has no further questions on the computer technician's. Well, what happened from 2005 to 2009? The record does not indicate, Your Honor, an indictment was brought within the statute of limitations, and the defendant has not challenged it on those grounds. Right. It just sort of seems like there's a big dark hole there. The record does not indicate, Your Honor. My apologies. All right. Well, I'm not going outside the record, but it's kind of you can't help but notice that for four years, nothing happened. Yes, Your Honor. Would the Court like me to address the 2009 search? Well, you have four and a half minutes. That's up to you. I don't know that we have any questions, but if you if you wanted to say anything, you can, but we don't have any questions on that for you. If the Court has no questions, we will rest on our briefs on that issue. All right. Thank you very much, Your Honor. Thank you. Let me quickly address two issues brought up by the government. The government said that the officer had to open, or as I understood it, had to open up the thumbnails to determine whether it was, in fact, child pornography. I didn't ever hear them say that. Okay. My point, that's what I heard. I may have misheard. Okay. I didn't hear that, but I can go back and review it. My pen started to write at that point. And but in any event, I mean, I think that's that's sort of the crux of the case is that you don't you don't search first and get the warrant second. You get the warrant first and you and you search later. With regard to this argument of forfeiture, and counsel for the government has cited some pages in the excerpts of record. I think those pages are, number one, quite ambiguous as to whether, which it's one little snippet of line that that I read. And so I don't think that there was, in fact, a concession by by a defendant's will as to that point. And secondly, with regard to not raising the issue in the brief, it was that is the scrolling through the 135 images versus the dozen images that was raised by us in response to an argument that was made by the government in their opposing brief. The court reviews the legality of the search de novo, and I think the court can look at any evidence in the record. And the evidence is, in fact, in the search warrant affidavit, which was, in fact, before the district court. So it's not like we're going outside the record, or it's not that there's information that was not before the court. Thank you very much. Thank you. This matter will stand submitted.
judges: Schroeder, Ripple, Callahan